UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Dariusz Dziadkiewicz and Carl G. Durden, on behalf of themselves, persons claiming under their health plans, and all persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Blue Cross & Blue Shield of Rhode Island,<br><br>Defendant. | C.A. NO. 96-275S |

STATE OF RHODE ISLAND SUPERIOR COURT

PROVIDENCE, S.C.

| | |
|---|---|
| Kerrigan Hanoian, Joseph Triangolo, and Terrence J. Kane, on behalf of themselves, persons claiming under their health plans, and all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Blue Cross & Blue Shield of Rhode Island,<br><br>Defendant. | CASE NO. 96-2579 |

## PLAINTIFFS' MEMORANDUM IN RESPONSE TO OBJECTIONS AND INQUIRIES OF CLASS MEMBERS

Plaintiffs in both captioned cases, by their attorneys, in response to the eight objections that were formally filed by Class Members, state and respond as follows:

## I. Formal Objections

As approved by the Court and stated in the Notices that were mailed to settlement Class Members, objections to the proposed settlement were required to be postmarked no later than June 17, 2005. Plaintiffs are aware of the following formal objections that were timely received in compliance with the Court's requirement as set out in the Notice:

1. May 3, 2005 objection filed by **Thomas E. Flynn,** [redacted] Warren, RI, 02885-0236 (Att. A).
2. May 5, 2005 objection filed by **Kevin D. Quinn,** [redacted], Wakefield, RI 02879-0872 (Att. B).[1]
3. May 6, 2005 objection filed by **Tara Lyn Hurley,** [redacted], No. 2, Pawtucket, RI 02860 (Att. C).
4. May 18, 2005 objection filed by **Cherylann Leaver,** [redacted] Cranston, RI 02921 (Att. D).
5. May 19, 2005 objections filed separately by **Norman R. Messier and Marie E. Messier,** [redacted], Greene, RI 02827-1605 (Att. E).
6. May 20, 2005 objection filed by **Catherine R. Morrissette,** [redacted] West Warwick, RI 02893 (Att. F).
7. June 1, 2005 objection filed by **Isabelle M. Vuocolo** [redacted], Warwick, RI 02889 (Att. G).
8. June 15, 2005 objection filed by **Mary Cipriano,** [redacted] Pawtucket, RI 02860 (Att. H).

### Substance of Formal Objections and Plaintiffs' Responses

### A. The Flynn Objection (Att. A)

Mr. Flynn objects generally to the size of the requested legal fee. Stating that he finds the proposed fee to be "an outrageous sum personally," Mr. Flynn calls attention to three prominent

[1] In this and other objections, personal health data, including subscriber number, are redacted. Copies of this Memorandum that are sent to the Objectors will not include attachments relating to other Objectors.

typographical errors that appeared in the published Notice of Settlement in the *Providence Journal*. He concludes that:

> To be compensated such an outrageous sum in light of this sloppy work product is a clear abuse of our legal system. A specific amount of the [fee] otherwise determined to be paid as a fair, reasonable and adequate fee should be deducted as a penalty.

Two questions are raised by Mr. Flynn. The first is the reasonableness of the fee in general; the second is Mr. Flynn's proposal that a penalty be assessed for the sloppy workmanship involved in allowing typographical errors to be published.

The size of the requested fee itself is the subject of plaintiffs' separate fee application, a copy of which will be sent to Mr. Flynn.[2] The application itself will constitute plaintiffs' response to Mr. Flynn's contention that the fee is outrageous.

The typographical errors were not the fault of Class Counsel. Counsel's response to Mr. Flynn, dated May 10, 2005 **(Att. A-1)** establishes that the "proof copy" submitted to Class Counsel by the *Providence Journal* – and approved by Class Counsel – did ***not*** contain the typographical errors that somehow made it into print after approval.

**B. The Quinn Objection (Att. B)**

Mr. Quinn's objection appears to be directed entirely at his personal potential recovery rather than at the terms of the settlement as a whole. He is "willing" to accept an amount larger than the Plan of Distribution will allocate to him. Counsel promptly responded to Mr. Quinn **(Att. B-1)**, advising that Class Counsel is not at liberty to negotiate individual amounts with individual class members. Mr. Quinn has not responded.

Beyond that response, plaintiffs are at a loss to comment further. Plaintiffs have no understanding of how Mr. Quinn arrived at the proposed amount that he would be "willing to

---

[2] The parties have agreed that this document will be filed by July 1, 2005.

accept." Plaintiffs believe Mr. Quinn's distribution should be – and must be – handled in a manner exactly commensurate with all other distributions.

**C. The Hurley Objection (Att. C)**

Ms. Hurley's objection, like the Quinn objection, is intensely personal.

The spreadsheets compiled for plaintiffs by Dr. Goldstein identify (by name and subscriber number) all class members entitled to recovery in this case. The spreadsheets do *not* include Ms. Hurley's name. In other words, Ms. Hurley is apparently a class member who will receive no distribution under the proposed Plan of Distribution.

Under the circumstances, plaintiffs can say nothing as to Ms. Hurley's medical statements in her objection, nor (because of encryption) do plaintiffs have access to any further information about claims that might apply to Ms. Hurley that did not qualify for payment under the proposed Plan of Distribution. (Plaintiffs received unencrypted subscriber numbers *only* for those who are entitled to receive distributions under the proposed Plan of Distribution.)

By personal letter to Ms. Hurley (**Att. C-1**), plaintiffs advised Ms. Hurley of her right to have an attorney provide her with further legal advice in this matter. To date, plaintiffs have not heard back from any attorney for Ms. Hurley or from Ms. Hurley herself.

**D. The Leaver Objection (Att. D)**

Cherylann Leaver complains that the amount allocated to her by the Plan of Distribution seems vastly insufficient in view of monies she spent in caring for her children during the relevant time period. She expresses concern that much of the money she actually spent on medical care for her children will (to the extent refunded by this case) be sent to her ex-husband, Frederick W. Silva. The import of her objection appears that she, not Mr. Silva, paid these medical bills; the conclusion she draws this is that she should receive any distribution to Mr. Silva.

Class Counsel immediately responded to Ms. Leaver, **(Att. D-1)**[3] explaining that Class Counsel could do nothing to help her, and could not – due to privacy laws – advise her whether Mr. Silva is a distributee under the Plan of Distribution or not. Ms Leaver has not responded.

Clearly, Ms. Leaver's objection is directed at personal issues, as opposed to class-wide issues. In this regard, it is not a typical objection to a class action settlement.

*Class Counsel is willing to do whatever the Courts instruct them to do with respect to this matter.* Without a court order, however, Class Counsel is precluded by HIPAA from disclosing any health information about Mr. Silva. As can be seen from counsel's response to Ms. Leaver **(Att. D-1)**, she has various options available to her to deal with her issue. Whether she avails herself of the suggested possibilities remains to be seen.

**E. The Messier Objections (Att. E)**

Norman and Marie Messier, who live at the same address, filed separate objections. This is appropriate, as they are separate class members. Each is in the fortunate position of receiving both a substantial initial distribution and, under the formula described under the Plan of Distribution, a secondary distribution in an as-yet-unknown amount.

Both objections are based on the Messiers' contention that class members should be entitled to full damages, rather than partial payment under the formulas described in the Plan of Distribution. Both objectors request an itemized accounting of each claim that led to damages.

With respect to the objection that the overall recovery generated by the proposed settlement is partial, plaintiffs can offer no response other than the fact that by their very nature, settlements almost always involve partial (rather than full) payment of damages. It is a rare case in which plaintiffs (whether or not in a class action context) are able to coax a defendant into

[3] Ms. Leaver's letter is dated May 18, 2005, but is postmarked June 4, 2005.

paying 100% of all possible damages. Even when such a settlement occurs, which is rare, there is normally a reduction in individual distribution shares caused by the diversion of a portion of the recovery to attorneys' fees and costs.

In this case, for reasons stated in Class Counsels' fee application, plaintiffs believe that this settlement is extremely fair and – given its complexity – extremely prudent. As it happens, under the Plan of Distribution, Marie Messier will receive 100% of all damages she incurred in the years 1990-1992 for all claim types (HealthMate, SCRIP, Participating Provider/deductible, office visit and VFC 278), and 100% of all damages she incurred in 1993 for all claim types *except* Participating Provider and Deductible. These are the "Category 1" damages. ***A total of $6.89 million of Category 1 damages will be mailed to over 65,000 class members in the initial distribution. These dollars represent 100% recovery of alleged damaged.***

Both Messiers sustained most of their damages in years after 1992-93, as evidenced by the fact that both have substantial "Category 2" damage amounts. For Norman Messier, this is the only period during which he incurred damage. Under the Plan of Distribution, all Category 2 damages are both discounted (for litigation risk) and pro-rated due to volume.

As will be explained in Plaintiffs' Memorandum in Support of Final Approval of the Proposed Settlement, the litigation risk factors were genuine. The Plan of Distribution was accordingly designed to provide greater distributions to persons who were damaged in the early 1990s (before Blue Cross began to introduce practices and contract language that may have prevented recovery in the later part of the 1990s), and lower distribution for the later years, as Blue Cross' defenses became progressively stronger.

Finally, plaintiffs are not obligated, under the terms of the settlement, to provide individualized claim histories to the Messiers' or other class members. To do so would be prohibitively expensive relative to the value of the process. Dr. Goldstein would be required to

retrace his calculations back through many, many stages to arrive at the original claim data; this process would be rendered even more time consuming and difficult by the fact that all of the early stages of calculations were based on encrypted subscriber numbers.

**F. The Morrissette Objection (Att. F)**

Ms. Morrissette's objection is very similar to the Messier objections. Quite simply, she objects "... because Blue Cross compromised and I feel they did so to save money. The class members including myself need a settlement that is fair, reasonable and adequate."

In this sense, the response to Ms. Morrissette's objection is the same as the response to the Messier objections--by definition, a settlement typically does not involve payment of full damages. This settlement, more than most, actually permits many tens of thousands of class members to receive 100 cents on the dollar for damages incurred during a certain period of time, with diminishing percentages thereafter.

Plaintiffs are not aware that objections of this sort have been upheld in other cases, particularly in the absence of an express allegation (coupled, perhaps, with a strong showing) that the case could, should and would have resulted in a 100% recovery for all class members if it had not been settled.

**G. The Vuocolo Objection (Att. G)**[4]

Ms. Vuocolo's objection is, like some of the others, intensely personal. In essence, Ms. Vuocolo believes that:

> We should all be reimbursed for the copayments for our prescriptions that were supposed to be a no charge item for cancer medications.

The dispute she describes began in 1999 and continued at least into 2004.

---

[4] The prescription drug history attached to Ms Vuocolo's objection is not attached for privacy reasons.

The issue described by Ms. Vuocolo is known to Class Counsel, *but was not a part of this lawsuit when it began, nor was it added at any time to the allegations in the suit*. In essence, Ms. Vuocolo is claiming that her Rhode Island Blue Cross coverage provides that she will pay no copayment (or will be reimbursed for any copayment paid) for drugs that are used in the treatment of cancer.

Class Counsel are absolutely satisfied that Ms. Vuocolo's claims are *not* a part of this case and are *not* released by this settlement.

Upon receipt of Ms. Vuocolo's objection (which did not reach Class Counsel until approximately June 20), counsel responded immediately and directly to Ms. Vuocolo (**Att. G-1**) with an explanation about her claims, and urged her to call attorney Peter Wasylyk of Providence for further explanation.

Ultimately, Ms. Vuocolo's issues do not pertain to this case or this proposed settlement, and should not stand in the path of final approval.

**H. The Cipriano Objection (Att. H)**

Ms. Cipriano's objection to the settlement is extremely similar to the Vuocolo objection. In Ms. Cipriano's case, however, the dispute *began* in 2004, long after the period covered by damages in the proposed settlement.

In brief, Ms. Cipriano states her dispute as Blue Cross as follows:

> Blue Cross has continually overcharged me on my prescription medication and medical copays for the past few years .... I have been protected under the Rhode Island Disabilities Act, and should have been paying the lowest copayment for my prescription drugs, regardless of the class they fall under. For instance, I have been charged the highest copays on my [brand name drugs]. Their generic forms do not work on me, so I am only able to take the name brand.

Class Counsel's response to Ms. Cipriano (**Att. H-1**) is very similar to the response to Ms. Vuocolo's, whose objection happened to arrive on the same day. Again, class counsel is

satisfied that Ms. Cipriano's disputes with Blue Cross are neither covered by the lawsuits that are the subject of the proposed settlement, nor in any way released by the terms of the proposed settlement. Ms. Cipriano is free to pursue her claims against Blue Cross for her unique grievances.

Accordingly, this settlement should not be upset as a result of Ms. Cipriano's unrelated issues.

## II. Other Class Member Inquiries and Communications

### A. Calls to Class Counsel

The mailed and published notices in this case contained a statement indicating that settlement Class Members and others who wished to speak with class counsel could call Providence attorney Peter N. Wasylyk. Many Class Members availed themselves of this opportunity, calling Mr. Wasylyk on a range of issues, none of which constituted an objection to the overall settlement. Mr. Wasylyk will later provide an affidavit regarding these calls; a death in his family precludes preparation of an affidavit in time to accompany this memorandum.

### B. Toll-Free Line

Matthew Duffy, legal assistant at the law firm of Siegel, Brill, Greupner, Duffy & Foster, P.A., was the person primarily responsible for responding to toll-free line calls. Between the mailing of notice and the date of this brief, a total of approximately 500 calls came in on the toll-free number listed in both the mailed and published notices. As described in the attached Affidavit of Matthew Duffy **(Att. I)**, the calls primarily involved requests for further written information, changes of address, and general inquiries. In particular, Mr. Duffy affies that none of the callers seemed to be objecting to the terms of the settlement as a whole. Instead, they were more concerned about understanding/assuring their own receipt of any amount to which they were entitled.

## Conclusion

Plaintiffs respectfully request that the Courts deny the objections and make any appropriate rulings to the extent the Courts want Class Counsel to take particular steps with reference to any or all of the Objectors.

Dated: July 1, 2005

Respectfully submitted,

By: ______________________________

Wood R. Foster, Jr.
Jordan M. Lewis
**SIEGEL, BRILL, GREUPNER & DUFFY, P.A.**
1300 Washington Square
100 Washington Avenue South
Minneapolis, MN 55401
(612) 339-7131
(612) 339-6591 fax

Amato A. DeLuca (#0531)
Miriam Weizenbaum (#5182)
**DeLUCA & WEIZENBAUM, LTD.**
36 Exchange Terrace
Providence, RI 02903
(401) 453-1500
(401) 453-1501 fax

Peter N. Wasylyk (# 3351)
**Law Offices of Peter N. Wasylyk**
1307 Chalkstone Avenue
Providence, RI 02908
(401) 831-7730
(401) 861-6064 fax

**ATTORNEYS FOR PLAINTIFFS**

37-HSF-6/30/05-20370\002