UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Dariusz Dziadkiewicz and Carl G. Durden, on behalf of themselves, persons claiming under their health plans, and all persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Blue Cross & Blue Shield of Rhode Island,<br><br>Defendant. | C.A. NO. 96-275S |

STATE OF RHODE ISLAND SUPERIOR COURT

PROVIDENCE, S.C.

| | |
|---|---|
| Kerrigan Hanoian, Joseph Triangolo, and Terrence J. Kane, on behalf of themselves, persons claiming under their health plans, and all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Blue Cross & Blue Shield of Rhode Island,<br><br>Defendant. | C.A. NO. PB96-2579 |

# Joint Motion for Final Approval of Settlement

The parties, by their attorneys, respectfully move the above-named Courts for their joint order in the form attached hereto, approving the proposed settlement in the captioned matters,

entering judgment thereon, and permitting the distribution process to go forward.

Dated: 7/7/05.

**PLAINTIFFS:**

By: ______________________

Amato A. DeLuca (#0531)
Miriam Weizenbaum (#5182)
**DeLUCA & WEIZENBAUM, LTD.**
199 North Main Street
Providence, RI 02903
(401) 453-1500
(401) 453-1501 fax

Wood R. Foster, Jr.
Jordan M. Lewis
**SIEGEL, BRILL, GREUPNER DUFFY & FOSTER, P.A.**
1300 Washington Square
100 Washington Avenue South
Minneapolis, MN 55401
(612) 337-6100
(612) 339-6591 fax

Peter N. Wasylyk (# 3351)
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
(401) 831-7730
(401) 861-6064 fax

**DEFENDANT:**

By: ______________________

Steven E. Snow (# 1774)
Melissa E. Darigan (# 4792)
**PARTRIDGE SNOW & HAHN LLP**
180 South Main Street
Providence, RI 02903-7120
(401) 861-8200
(401) 861-8210 (FAX)

37-HSF-7/5/05-20370\002

807818_2/747-61

## CERTIFICATION

I hereby certify that a true and accurate copy of the within was served on counsel of record listed below on this 7th day of July, 2005 by first class mail postage pre-paid :

Peter N. Wasylyk, Esq.
**Law Offices of Peter N. Wasylyk**
1307 Chalkstone Avenue
Providence, RI 02908

Wood Foster, Esq.
**Siegel, Brill, Greupner & Duffy, P.A.**
1300 Washington Square
100 Washington Avenue South
Minneapolis, MN 55401

Jordan Lewis, Esq.
**Siegel, Brill, Greupner & Duffy, P.A.**
1845 Walnut Street
24th Floor
Philadelphia, PA 19103

Steven Snow, Esq.
Melissa Darigan, Esq.
**Partridge, Snow and Hahn**
180 South Main Street
Providence RI, 02903

Tina DeLaine

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

Dariusz Dziadkiewicz and Carl G. Durden, on behalf of themselves, persons claiming under their health plans, and all persons similarly situated,

Plaintiffs,

vs.

Blue Cross & Blue Shield of Rhode Island,

Defendant.

C.A. NO. 96-275S

STATE OF RHODE ISLAND

SUPERIOR COURT

PROVIDENCE, S.C.

Kerrigan Hanoian, Joseph Triangolo, and Terrence J. Kane, on behalf of themselves, persons claiming under their health plans, and all persons similarly situated,

Plaintiffs,

v.

Blue Cross & Blue Shield of Rhode Island,

Defendant.

CASE NO. 96-2579

# Plaintiffs' Memorandum in Support Of Joint Motion for Final Approval

## Introduction

A little more than nine years after they began, the captioned cases are finally ripe for final disposition in all respects.

After years of litigation and arduous settlement negotiations, the parties achieved closure in late 2004, reduced the proposed settlement to writing in early 2005, obtained preliminary approval from these Courts in March 2005, and now seek finality.

The Court-ordered notice methodology has been observed; the Plan of Distribution is ready for full implementation, and the Courts have received appropriate applications for fees and costs from counsel and the class representatives.

**Settlement of this Complex Litigation is Appropriate**

The broad scope and inherent complexity of the underlying claims, with which the Courts are intimately familiar and the intricacies of the data processing necessary to calculate damages, in combination, clearly militate in favor of settlement approval.

If the parties to this litigation can agree on anything, it is that separate state and federal trials in these cases could easily have become mired in a sea of objections, difficult evidentiary issues, rare legal issues, and potentially overlapping results.

By settling, much was achieved:

- A distinct saving of judicial and jury time;
- The probable saving of substantial costs for one or more special masters;
- The saving of at least two more years of intense litigation;
- Injunctive relief that works to the advantage of all Blue Cross subscribers;
- A Plan of Distribution that "weights" the claims in such a manner as to mirror likely outcomes of litigation, to the extent possible;
- A meaningful and symbolic payment by Blue Cross that will provide 116,000 class members with substantial cash payments.

The only thing that was certain about these cases, in the absence of a settlement, is that literally *nothing* was certain. Both sides faced enormous risks in the event of failure, and the

court system itself faced a potential barrage of appeals, including the possibility of interim appeals during trial.

By settling, Blue Cross has closed the books on a matter that has been footnoted in its balance sheet for many years, and has done so in a manner that brings credit to the company. The settlement appears to have been fully accepted by the Rhode Island community.

For the Class, the settlement provides a measure of vindication of the claims that they have pursued for many years, simultaneously forcing plaintiffs to reconcile the principles involved with the proof difficulties that would necessarily have characterized both trials in the case.

The result is a "win-win" situation for Rhode Island Blue Cross subscribers, for the Courts, for the parties, and for the broader social purposes served by class actions generally.

**The Notice Provisions of the Stipulation were Fully Observed**

The attached Affidavits of Ann Lockhart Watson and Heidi Furlong establish detailed compliance with the notice provisions of the Stipulation.

In summary, notices were mailed to 216,152 Class Members. Of these, 116,000 were "personalized," meaning that they not only contained the recipient's name and address, but identified in detail the amount of Category 1 damages, the amount of Category 2 damages, the Estimated Initial Distribution Amount, and the "Secondary Damage Amount" from which (for approximately 56,000 recipients) a secondary distribution will be calculated.

A second 100,000 Notices went to class members who – by the terms of the Plan of Distribution – were damaged by an amount deemed "*de minimis*" by the parties (and preliminarily approved as such by the Courts), explaining to them why they were receiving no distribution, and explaining how to object to the settlement if they desired to do so.

An additional 80,000 class members received no mailed notice, because their damages were below $2.50 before adjustment of any kind. To reach these class members, summary notice was published in 40 Rhode Island newspapers. The publication details appear in Ms. Watson's affidavit.

As provided in the Stipulation, a website was created (www. RIBlueCrossSettlement.com). One interactive feature of the website was the ability for subscribers to register a change of address, since many recipients of distributions in these cases have moved more than once since the early 1990s, when many of the disputed claims arose. Over 500 address changes were recorded, both directly (by internet) and indirectly (by calling the toll-free line). These address changes will be sent to plaintiffs' expert to be recorded in the database of information that will ultimately result in the distribution of checks.[1] More than 8,000 additional address changes were identified by submitting each of the 216,000 addresses that were provided by Blue Cross to an NCOA (National Change of Address) scan prior to the mailing of notices.

Accordingly, the parties have every reason to believe that most of the mailed notices reached their mark, and that the "success" rate when checks are mailed will be even higher.

**Objections**

A total of nine objections were received by Class Counsel, and these have been addressed in a separate pleading. A quick review of the objections reveals that some are quite personal in nature and complain of unrelated disputes with Blue Cross while others, misconceiving the nature of a settlement, complain that Blue Cross should be required to pay

---

[1] See **Affidavit of Heidi Furlong, ¶4.**

100% of damages, not a compromise amount. One objector objected to the "outrageous" amount

That so few persons out of such a large base of proposed recipients (and non-recipients) of distributions have recorded objections seems to constitute a ringing endorsement of the settlement in general. There has clearly been no groundswell of adverse opinion, no organized resistance, no "professional" objections, and no objection that appears to rise to the level of a threatened appeal.

In short, the parties appear to have settled the case (and proposed a distribution methodology) in a way that has been satisfactory to the Class as a whole.

**Plan of Distribution**

The unique characteristic of the Plan of Distribution in this case is that it carefully and consistently mirrors the strengths and weaknesses of the plaintiffs' case. It does so in three primary ways:

- First, the damages are considered separately by claim type. These include:
    - HealthMate copay claims;
    - SCRIP and Preferred Rx copay claims;
    - Participating Provider and Deductible claims;[2]
    - Office Visit and VFC 278 claims
- Second, damages were reduced (separately by claim type) for perceived "litigation risk." These risks, in some cases, increased over time. Thus, for example, SCRIP damages were not reduced at all for years 1990, 1991 and 1992; for the next years, they were reduced 25%, and for years beginning 1995, they were reduced 50%. This risk tracks various language changes and other defenses that were raised by Blue Cross during the course of the litigation.

---

[2] When the litigation began, counsel believed there was a greater distinction between these claims than the data (and the math) ultimately revealed. By the time the case was settled, it was clear that the calculation of damages for these two types of claims was identical, subject to a simple adjustment for the fact that a deductible was involved in the claim.

- Finally, damages were divided into two categories – "Category 1" and "Category 2." The purpose of this division was to achieve the highest level of distribution for Class Members having damages exceeding $25 during the years in which the lowest litigation risk existed (generally 1990-1993). A minimum of $25 and a maximum that varied by claim type were assigned, with all amounts falling below the minimum and over the maximum carrying over into "Category 2." Category 2 damages also included damages for all years not covered by Category 1, again subject to separate maxima for each claim type. Category 2 claims, unlike Category 1 claims, are subjected to prorating in order to allow all Category 2 claims to be paid at a level permitted by the net amount available for distribution after payment of attorneys' fees and all Category 1, damages.

*The net effect of the Plan of Distribution is that the very strongest claims are paid at 100 cents on the dollar. This actually accounts for nearly $7 million of distributions to over 60,000 class members.*

A certain amount of money is necessarily set aside to pay administrative costs. As well, experience teaches that many checks will simply not be cashed within the 60-day period permitted by the Plan of Distribution.

Accordingly, a second distribution will be made several months after the first. People receiving initial distributions who also have a carryover amount ("secondary damage amount") have the opportunity to receive a second distribution by submitting a claim form. The claim form will accompany the initial check for people so entitled, and a short and simple letter of explanation describes the claim process. At approximately January 1, 2006, all remaining funds not required for administrative expense or the $50,000 charitable distribution will be distributed pro rata to persons submitting claims. The pro ration will be based upon their "secondary damage amount," which consists of the unpaid portion of their Category 2 damages (due to pro rating) and any additional amounts that exceeded the Category 2 maximums.

Most of the foregoing information is summarized in the following table, which appeared in the Plan of Distribution and in the settlement website.

**TABLE 1**

| | | Category 1 (No proration) | | | Category 2 (Subject to pro rating) | | |
|---|---|---|---|---|---|---|---|
| **Claim Type** | **Reductions** | **Claims Years** | **Category 1 Minimum** | **Category 1 Maximum** | **Category 1 Carryover** | **Claim Years** | **Category 2 Maximum** |
| HealthMate | None (1990-94)<br>25% (1995-2000) | 1990-93 | $25 | $1,250 | Yes | 1994-2000 | $250 |
| SCRIP and Preferred Rx | None (1990-92)<br>25% (93-94) for SCRIP;<br>50% (95-00) for SCRIP;<br>90% (all years) for P.Rx | 1990-93 | $25 | $200 | Yes | 1994-2000 | $300 |
| Participating Provider and Deductible | None (1990-92)<br>25% (93-97)<br>90% (98-00) | 1990-92 | $25 | $500 | Yes | 1993-2000 | $750 |
| Office Visit and VFC 278 | 50% (90-91) for OV<br>90% (92-00) for OV<br>25% for VFC 278 | 1990-93 | $25 | $250 | Yes | 1994-2000 | $500 |

While the plan is intricate and complex, it is eminently fair, and accurately reflects perceived litigation risks.

Individual distribution amounts are meaningful. In the initial distribution, 31,103 class members will receive checks of $100 or more; the average check in the initial distribution is approximately $93. The largest initial distribution is $1,434.08, and the smallest distribution is $10. While the vast bulk of recipients remain in Rhode Island, checks will be sent to 46 states, the District of Columbia, Puerto Rico, and numerous foreign countries.

**Proposed Final Order**

Accompanying the Joint Motion for Final Approval in this matter are two forms of final order. The only manner in which they differ is that one contains blank spaces for the amount of fees, costs and class representative awards that are the subject of a separate fee application; the other fills in these blanks with the amounts requested by plaintiffs.

**Conclusion**

Plaintiffs respectfully ask the Courts for their Final Order and separate judgments approving the settlement, the Plan of Distribution, and all aspects of settlement implementation. Plaintiffs respectfully solicit denial of the objections and approval of class counsels' Application for attorneys' fees, costs and class representative awards.

Dated: July 6, 2005.

Respectfully submitted,

By: ______________________

Amato A. DeLuca (#0531)
Miriam Weizenbaum (#5182)
**DeLUCA & WEIZENBAUM, LTD.**
36 Exchange Terrace
Providence, RI 02903
(401) 453-1500
(401) 453-1501 fax

Wood R. Foster, Jr.
Jordan M. Lewis
**SIEGEL, BRILL, GREUPNER & DUFFY, P.A.**
1300 Washington Square
100 Washington Avenue South
Minneapolis, MN 55401
(612) 337-6100
(612) 339-6591 fax

Peter N. Wasylyk (# 3351)
**Law Offices of Peter N. Wasylyk**
1307 Chalkstone Avenue
Providence, RI 02908
(401) 831-7730
(401) 861-6064 fax

**ATTORNEYS FOR PLAINTIFFS**

37-HSF-7/6/05-20370\002

**CERTIFICATION**

I hereby certify that a true and accurate copy of the within was served on counsel of record listed below on this 7th day of July, 2005 by first class mail postage pre-paid :

Peter N. Wasylyk, Esq.
**Law Offices of Peter N. Wasylyk**
1307 Chalkstone Avenue
Providence, RI 02908

Wood Foster, Esq.
**Siegel, Brill, Greupner & Duffy, P.A.**
1300 Washington Square
100 Washington Avenue South
Minneapolis, MN 55401

Jordan Lewis, Esq.
**Siegel, Brill, Greupner & Duffy, P.A.**
1845 Walnut Street
24th Floor
Philadelphia, PA 19103

Steven Snow, Esq.
Melissa Darigan, Esq.
**Partridge, Snow and Hahn**
180 South Main Street
Providence RI, 02903

Tina DeLaine