UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Dariusz Dziadkiewicz and Carl G. Durden, on behalf of themselves, persons claiming under their health plans, and all persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Blue Cross & Blue Shield of Rhode Island,<br><br>Defendant. | C.A. NO. 96-275S |

| | |
|---|---|
| STATE OF RHODE ISLAND<br><br>PROVIDENCE, S.C. | SUPERIOR COURT |
| Kerrigan Hanoian, Joseph Triangolo, and Terrence J. Kane, on behalf of themselves, persons claiming under their health plans, and all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Blue Cross & Blue Shield of Rhode Island,<br><br>Defendant. | CASE NO. 96-2579 |

# Motion for Approval of Final Disbursements

Plaintiffs, by their attorneys, respectfully move the above-named Courts for their joint or several order(s) as follows:

1. Ordering that the attached Memorandum in support of these motions may be received and filed as the final report of class counsel in the captioned matter;

2. Ordering that after completion of disbursements as further directed in the Courts' order(s), class counsel will have discharged their duties in settlement administration, and that further disbursements need not be made to any person or party;

3. Approving such portion of the requested final disbursements of class counsel for fees and expenses as to the Courts appear just and equitable under these circumstances;

4. Ordering, in the exclusive discretion of the Courts, that any "recent class member requests" be honored by payment thereof from remaining funds on hand;

5. Directing distribution of the charitable donation fund of $50,000 plus interest that remains on hand; and

6. Ordering such other and further relief as to the Courts appear just and equitable in the circumstances.

Dated: March 6, 2007.

Respectfully submitted,

By: ______________________

Wood R. Foster, Jr.
Jordan M. Lewis
**SIEGEL, BRILL, GREUPNER. DUFFY & FOSTER, P.A.**
1300 Washington Square
100 Washington Avenue South
Minneapolis, MN 55401
(612) 339-7131
(612) 339-6591 fax

Amato A. DeLuca (#0531)
Miriam Weizenbaum (#5182)
**DeLUCA & WEIZENBAUM, LTD.**
36 Exchange Terrace
Providence, RI 02903
(401) 453-1500
(401) 453-1501 fax

Peter N. Wasylyk (# 3351)
**Law Offices of Peter N. Wasylyk**
1307 Chalkstone Avenue
Providence, RI 02908
(401) 831-7730
(401) 861-6064 fax

***ATTORNEYS FOR PLAINTIFFS***

37-HSF-3/6/07-20370\002

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Dariusz Dziadkiewicz and Carl G. Durden, on behalf of themselves, persons claiming under their health plans, and all persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Blue Cross & Blue Shield of Rhode Island,<br><br>Defendant. | C.A. NO. 96-275S |

STATE OF RHODE ISLAND SUPERIOR COURT

PROVIDENCE, S.C.

| | |
|---|---|
| Kerrigan Hanoian, Joseph Triangolo, and Terrence J. Kane, on behalf of themselves, persons claiming under their health plans, and all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Blue Cross & Blue Shield of Rhode Island,<br><br>Defendant. | CASE NO. 96-2579 |

# Memorandum in Support of Motion for Approval of Final Disbursements and Final Report of Class Counsel

## INTRODUCTION

At long last, the distribution of settlement proceeds to class members in the captioned cases is complete. After all is said and done, as explained below, a total of $253,300 remains in the possession of class counsel.

The purpose of this brief is to advise the Courts of all steps taken in conjunction with the settlement process, to request disbursements of administrative costs and fees provided for in the Stipulation and Plan of Distribution, to obtain court approval of the proposed distribution of remaining funds to non-profit organizations, and to close out this matter with complete finality.

Interim reports were given to the Courts on October 5 and October 19, 2005; copies of those letters are attached to the accompanying Affidavit of Wood R. Foster, Jr. as **Att. B. and C**.

Before embarking on a narrative report in support of the requested order, two chronologies are relevant. The first describes the general chronology of the settlement administration process; the second provides a chronology for the actual distribution of the settlement funds.

## CHRONOLOGY

| Date | Event | Documentation |
|---|---|---|
| [As of] January 11, 2005 | Stipulation of Settlement | (on file) |
| March 23, 2005 | Preliminary Approval | (on file) |
| March 30, 2005 | Funds transferred to class counsel | Confirmation (**Att. E**) |
| April 2005 | Mailing of Notice | Affidavit of Ann Watson (on file) |
| July 15, 2005 | Fairness Hearing | |
| July 15, 2005 | Final Order approving settlement | **Att. A** |
| August 19, 2005 | Court-approved fees and costs disbursed to counsel | See Chronology of Deposits and Disbursements, *infra* |
| Late August, 2005 | Initial mailing of checks by U.S. Bank | |
| August-December 2005 | Tracing class members whose initial checks were returned | See **Atts. B and C** |

| Date | Event | Documentation |
|---|---|---|
| August 2005-August 2006 | Telephone inquiries from class members | See **Atts. B and C**; see also, **Atts. M, N and O** |
| December 2005-November 2006 | Reissued checks – first round | **Att. F** |
| January-February 2006 | Preparation for second distribution | See **Att. D** |
| February 24, 2006 | Second round checks mailed by U.S. Bank | |
| March-November 2006 | Ongoing reissue of first and second round checks | See **Att. F** |
| May 2005 – September 2006 | IRS private ruling request and 2005 tax return | See **Atts. G and H** |
| December 2006 | Final reissued checks clear | |

## CHRONOLOGY OF DEPOSITS AND DISBURSEMENTS

| Event | Amount | Documentation |
|---|---|---|
| Funds transferred to Class Counsel | $17,500,000 | Confirmation, **Att. E** |
| *Less:* Court-approved fees | -5,670,000 | Final Order, **Att. A** |
| *Less:* Court-approved pre-settlement costs | -421,306 | Final Order, **Att. A** |
| Subtotal: | $11,408,694 | |
| *Add:* 2005 interest earned, all accounts | 217,129 | 2005 Tax Return, **Att. H** |
| *Less:* 2005 bank charges | -180,116 | 2005 Tax Return, **Att. H** |
| *Less:* Tax accounting/revenue ruling | -14,000 | 2005 Tax Return, **Att. H** |
| *Less:* Expert fees | -1,357 | 2005 Tax Return, **Att. H** |
| *Less:* Direct distributions, August 2005[1] | -165,151 | 2005 Tax Return, **Att. H** |
| *Less:* Direct distributions, September 2005 | -7,917,673 | 2005 Tax Return, **Att. H** |
| *Less:* Direct distributions, October 2005 | -625,081 | 2005 Tax Return, **Att. H** |
| *Less:* Direct distributions, November 2005 | -51,504[2] | 2005 Tax Return, **Att. H** |
| Approximate remaining balance December 31, 2005 | $2,434,502[3] | |
| Funds on hand February 2006 for second distribution and remaining costs | 2,449,443 | Statement, **Att. J** |

[1] These figures are taken from monthly summary bank statements.

[2] Bank records show that 87,409 first round checks were cashed during these four months. The first checks were cashed August 30, 2005; the account was closed November 22, 2005 in order to enforce the check cashing deadline and to permit preparations for the second distribution to go forward.

[3] Does not include $50,000 charitable donation fund. See **Att. J**.

| Event | Amount | Documentation |
|---|---|---|
| *Less:* Direct distributions,[4] March 2006 | -2,037,072 | **Statements, Att. I** |
| *Less:* Direct distributions, April 2006 | -147,646 | **Statements, Att. I** |
| *Less:* Direct distributions, May 2006 | -22,052 | **Statements, Att. I** |
| *Less:* Direct distributions, June 2006 – January 2007 | -37,375 | **Statements, Att. I** |
| *Less:* Accounting Fees | -2,100 | |
| | $203,198 | |
| Funds on hand February 15, 2007 | | |
| a. Settlement Administration account | $ 203,198 | **Att. L** |
| b. Charitable Savings Account | 50,102 | **Att. L** |
| | $ 253,300 | |

## REPORT OF CLASS COUNSEL ON SETTLEMENT ADMINISTRATION

Administration of this settlement by class counsel was a far larger undertaking than anticipated, and has taken much longer than estimated. Despite the time involved, the administration of this settlement has been successful in nearly every respect. Approximately 90,000 first round distribution recipients received and cashed their first round checks. Many others could not be located, or failed to cash their checks. Some 56,000 first round check recipients qualified to file a claim form if they wished to receive a second round check. The claims experience was very nearly 50%, with over 26,000 checks issued. Of these, a very high percentage were cashed, because recent addresses of claimants were known due to the claim form. Thus, in the second round, 26,051 checks were cashed by class members. Many of these were reissued checks based on lost, destroyed, or otherwise uncashed checks as well as checks originally payable to class members who had died.

---

[4] Distribution figures include bank charges, which total $93,387 for 2006. See **Att. K**. Monthly statements are not attached, but will be produced upon request. Some are extremely voluminous, as they detail tens of thousands of checks.

The process of reissuing checks was time-intensive and involved communications with the class members involved, detailed checking with the bank to verify that the check had not been cashed, and any other verification steps appropriate to the circumstances.

In all cases of reissued checks, class counsel expressly verified that the replaced check had not been cashed before reissuing a new one. In the case of deceased class members, the "benefit of the doubt" was given to the information provided by the class member's relative who generally contacted class counsel. Nonetheless, class counsel required a death certificate and a letter from a responsible party identifying the names of the person(s) to whom the reissued check(s) should be distributed.

Class counsel took the precaution of obtaining a private IRS ruling to protect counsel, Blue Cross and class members with respect to the possible tax consequences of the distributions. The private IRS ruling is attached at **Att. G**. As well, class counsel filed a 2006 tax return which resulted in the payment of no tax on interest income of over $200,000. The return is attached at **Att. H**. A return must also be filed for 2006 and a final return in 2007. However, no income has been earned by the fund for either year. The cost of these filings is estimated by the preparer at $1000 per tax year, for a total of $2000.

Class counsel believe they have acted appropriately and carefully in all respects, and have maintained good (and very voluminous) records of all transactions, including extremely lengthy bank computer runs (detailing each of the approximately 115,000 checks), as well as many boxes filled with cancelled checks. The most voluminous bank statements are not attached to this report, but are available for the Courts' review if desired.

Class counsel respectfully request that the Court approve the process of distributions as detailed herein.

## REQUESTED DISBURSEMENTS TO COUNSEL

By agreement among class counsel, the class settlement administration fell primarily on the Siegel Brill firm in Minneapolis. The work of the Siegel Brill firm is detailed below. In addition, the Providence firm of DeLuca & Weizenbaum was responsible for collecting, sorting and packing all claim forms and returned mail and arranging for their delivery to the Siegel Brill firm in Minneapolis. Providence attorney Peter Wasylyk's telephone number was provided to class members in the cover letter that accompanied the tens of thousands of first round checks in August 2005. This was done in order to give class members a local contact for purposes of answering any inquiries they might have about their checks. As explained in **Atts. B and C**, a newspaper article in the *Providence Journal* also offered Mr. Wasylyk's name as a source of information, resulting in a deluge of telephone calls that nearly swamped Mr. Wasylyk's office during the fall of 2005 and the spring of 2006. Thousands of callers used Mr. Wasylyk's number to inquire about checks, or about the settlement generally as described in the *Journal*. Many, if not most, of the callers in response to the *Journal* article were not class members, because their Blue Cross coverage did not result in overcharges during the relevant years. Nonetheless, an air of "entitlement" characterized many of these calls, both in terms of the callers' insistence that they should have received funds and in terms of their treatment of Mr. Wasylyk as "their attorney," despite not having class member status.

Mr. Wasylyk hired independent contract assistants to help him field, record and return these calls and the many messages left on his answering machine. He and his spouse coordinated and managed the contract assistants. As well, he and his wife themselves returned large numbers of calls and corresponded with both class members and non-class members. Even then the volume of calls outstripped Mr. Wasylyk's ability to return them all, either personally or

through contract staff. To the extent practicable, lists of unreturned calls were forwarded by Mr. Wasylyk's staff to the Siegel Brill office, where legal assistant Matthew Duffy and intern Callie Wahl returned the calls as soon as possible. **Att. M** is the first page of a ten-page list prepared by Mr. Wasylyk's office containing some 500 names and phone numbers.[5] **Att. N** reflects a different manner in which calls were forwarded from Mr. Wasylyk's office; this list bears the notations of the Siegel Brill employees who returned these calls, of which there were over 700.

*Mr. Wasylyk will file a separate itemization of the reimbursement he seeks for additional office clerical staff to help him handle the incoming calls during the fall of 2005 and on into 2006.*

Calls were received/returned from many thousands of class members. Many spoke with representatives of Siegel Brill or Mr. Wasylyk's office more than once. Some callers called repeatedly. Not every incoming call on the Siegel Brill toll free line (primarily answered by Matthew Duffy) resulted in a written record. If Mr. Duffy could answer the questions satisfactorily without follow up, he generally did not make a notation. **Attachment O** is a sample page consisting of one of the 219 pages of this type which were kept by Mr. Duffy.

A total of 530 checks were reissued, many after numerous telephone conversations and/or correspondence with the parties seeking reissue or an opportunity to file a late claim form. **Att. F** shows the number of reissued checks for the first and second distributions (together with 53 second distribution checks for which the recipient failed to file a timely claim form). The dates simply reflect dates on which batches of reissued checks were sent.

---

[5] These are specimen pages only. On Attachments M, N, and O, redactions have been made to obliterate information that is not properly displayed in a public filing.

In general, the policy as to requested reissues was one of lenience and cooperation. Only in the weeks immediately preceding this final report have new requests for reissued checks been denied.

The administration of this settlement by the Siegel Brill firm included the following tasks, many of which are required by the Plan of Distribution, and others of which became necessary as the logistics and complexities of the banking aspects became apparent:

- creation and maintenance of the settlement website;
- preparation and posting of the "Frequently Asked Questions" text for use on the website;
- establishment and maintenance of toll free telephone line;
- calculation of distribution amounts and supervision of expert witness regarding same;
- selection of mailing, banking and other service providers;
- preparation of interim reports;
- retention and supervision of tax accountants;
- obtaining an IRS revenue ruling exempting the settlement from the requirement of filing Form 1099 reports;
- opening and monitoring of numerous bank accounts, working with bankers and supervising investment instruments used to generate interest;
- final approval of all text on checks and accompaniments;
- final approval of mailing lists for first and second distributions;
- answering, returning and fielding thousands of class member inquiries;
- handling overflow telephone inquiries to Mr. Wasylyk's office;
- dealing with all written inquiries;
- managing and documenting over $500 reissued checks, including numerous communications with bank, concerning allegedly lost/undelivered checks;

- developing and implementing procedures for families of deceased class members who requested reissue;
- responding to banks to inquiries about checks issued to class members;
- maintaining bank records;
- working with various vendors to locate class members whose checks were returned;
- documenting and managing returned (undelivered) checks as well as cancelled checks; and
- organizing and preparing documents for presentation to the Courts in final accounting.

The Siegel Brill firm has normal hourly timekeeping practices in place, and detailed time records are attached at **Atts. P** (services through 12/31/05) and **Q** (services from January 2006-present). With respect to these statements,

- Lawyer time is billed at $0 per hour pursuant to paragraph 2.4.1 of the Plan of Distribution approved by the Courts, which provides that

  > Time expended by class counsel in supervising the legal assistant(s) (and other aspects of settlement administration) will not be separately compensated, but will be deemed included in any fee awards approved by the Courts.

  A separate provision of the Plan of Distribution (paragraph 2.4.2) permitted counsel to request remuneration in the event of "extraordinary and unanticipated amounts of time ...." In this instance, class counsel does not believe that the time involved by attorneys in the settlement process was extraordinary, and *no claim is made for attorney time.*

- The personnel at Siegel Brill who worked on the class administration included legal assistants Ann Watson and Matthew Duffy. Their time was charged at $95 per hour, the maximum permitted under paragraph 2.4.1 of the Plan of Distribution. Additional work was provided by administrative assistant Heidi Furlong and interns Callie Wahl and Gretchen Lander. These three were billed at $75 per hour, the lowest rate at which Siegel Brill bills such time.

Mr. Wasylyk's request for reimbursement for these services is attached as **Att. R**.[6] The DeLuca firm's itemized statement for services is attached at **Att. S**.

---

[6] In the event counsel does not receive Mr. Wasylyk's statement for services by the time this Motion and Report are filed with the Courts, they will be separately submitted to the Courts by Mr. Wasylyk.

Perusal of the attached billing detail will quickly inform the Courts of the vast and ongoing amount of work that was entailed in settlement administration. Even at the relatively low hourly rates charged for the employees tasked with the settlement administration, the total request for paralegal/administrative services comes to over $125,000.

In addition to the time expenditures, the Siegel Brill firm spent $7,070.95 in out-of-pocket costs. These costs are detailed in the itemized statements.

In summary, Class Counsel respectfully asks for an order of these Courts permitting Class Counsel to write checks from the settlement proceeds remaining in the account for services rendered in settlement administration:

| | |
|---|---|
| Siegel, Brill, Greupner, Duffy & Foster, P.A. Fees: | $ 129,087.75 |
| Siegel, Brill, Greupner, Duffy & Foster, P.A. Expenses: | $ 7,070.95 |
| DeLuca & Weizenbaum Fees: | $ 3,020.00 |
| DeLuca & Weizenbaum Costs: | $ 804.50 |
| Law Offices of Peter N. Wasylyk (reimb. for hirees): | $ 77,390.00 |
| Law Offices of Peter N. Wasylyk (expenses) | $ 4,271.00 |
| **Total Requested Payments** | **$ 221,644.20** |
| **Total On Hand:**[7] | **$ 203,198.00** |

The total requested above, after adjusting for the required holdback of $2000 for future tax preparation, is nearly $20,000 more than the amount remaining in hand;[8] clearly, expenses were higher than anticipated, though much lower than the costs that would have been associated with the retention of a professional class action claims administrator. If the Courts approve the requested disbursements to the full extent of the requests, class counsel propose that the amounts requested by the various attorneys be used first to pay 100% of the requested fees and expenses of DeLuca and Weizenbaum and all out of pocket costs of the Siegel Brill and Wasylyk firms,

---

7 Of this amount, $2000 must be held in reserve for payment of tax preparation fees for 2006 and 2007.

8 If the Courts approve late payment to class members (see below), the $1,475 required for that purpose will also be subtracted from the current balance.

with the remaining invoices (Siegel Brill and Wasylyk only) being reduced pro-rata as necessary to permit payment in full from the remaining settlement funds in hand, leaving sufficient funds ($2,000) in hand to pay for the 2006 and 2007 tax returns for the settlement fund.

## MISCELLANEOUS RECENT CLASS MEMBER REQUESTS

Because of the need to "fix" a final balance for purposes of this accounting, class member requests for late filing of claims, replacement of lost or destroyed checks, etc. were not honored after February 1, 2007. (As well, two or three earlier such requests had not been honored.)

All of the communications concerning unsatisfied late requests for payment are attached at **Att. T**; the following table summarizes the amounts involved. (One of these, Calenda, was the subject of a February 22, 2007 letter to the Court; Mr. Wasylyk had previously forwarded this request (February 15, 2007) to the Siegel Brill firm.)

If all of the claims at **Att. T** are honored, an additional $1,475.73 will be expended from remaining funds.

Class counsel has no objection to honoring all such claims, but believe it is prudent at this point to seek court approval of such payment.

**Recent Class Member Check Requests**

| Class Member | 1st Distribution | 2nd Distribution |
|---|---|---|
| Adele Michaelides | 50.24 | |
| Judith Sangermano | 32.47 | |
| Jayne Fowler | | 29.89 |
| Gail Ann Calenda | 713.11 | 228.34 |
| Thomas Sapontgis | | 69.92 |
| Anna Principe | | 40.82 |
| Anthony Nigri | | 152.78 |
| Margare Charbonneau | | 158.16 |
| Subtotals | 795.82 | 679.91 |
| Total | | $1,475.73 |

## CHARITABLE DISTRIBUTION

Under the Stipulation of Settlement (par. 14), $50,000 was held aside and has been in a trust account since April 2005, for purposes of making a charitable distribution. Such funds, often called "cy pres" funds, are reasonably common in class actions, and are sometimes thought of as consideration for the unfunded claims of class members who did not receive notice or otherwise failed to take advantage of benefits available to them. As well, such funds are often considered in terms of consideration for "de minimis" claims that were too small to justify individual distributions.

Applicable case law suggests that the distribution of *cy pres* funds should go to non-profit organizations that bear a reasonable relationship to the issue that gave rise to the underlying suit. In this case, the parties appear to agree that health-related non-profit organizations are appropriate donees for the $50,000 in *cy pres* funds.

To the best of class counsel's knowledge, there is no "set" methodology for selection of *cy pres* fund recipients. In this case, at the request of Rhode Island Blue Cross Blue Shield, the notices that were sent to class members stated that the donation fund would benefit "health-related Rhode Island charities, including the Rhode Island Free Clinic and the Rhode Island Community Health Centers." Blue Cross has indicated to class counsel that it is "very interested" in having these charities benefit from the funds, especially the Rhode Island Free Clinic.

At the fairness hearing in July 2005, class member Tara Hurley suggested that some *cy pres* funds should go to "AIDS Project Rhode Island."

**Attachment U** displays web pages from the three non-profit organizations suggested thus far. Class counsel believes that other suggestions may be forwarded to the Courts before the

Courts' hearing on this matter; as well, the parties have no objection to the Courts themselves adding to the list of potential recipients.

## CONCLUSION

Class counsel respectfully submit this report and motion for authority to make final disbursements as proposed herein.

Dated: March 6, 2007.

Respectfully submitted,

By: ______________________________

Wood R. Foster, Jr.
Jordan M. Lewis
**SIEGEL, BRILL, GREUPNER.**
**DUFFY & FOSTER, P.A.**
1300 Washington Square
100 Washington Avenue South
Minneapolis, MN 55401
(612) 339-7131
(612) 339-6591 fax

Amato A. DeLuca (#0531)
Miriam Weizenbaum (#5182)
**DeLUCA & WEIZENBAUM, LTD.**
36 Exchange Terrace
Providence, RI 02903
(401) 453-1500
(401) 453-1501 fax

Peter N. Wasylyk (# 3351)
**Law Offices of Peter N. Wasylyk**
1307 Chalkstone Avenue
Providence, RI 02908
(401) 831-7730
(401) 861-6064 fax

***ATTORNEYS FOR PLAINTIFFS***

37-HSF-3/6/07-20370\002