UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Dariusz Dziadkiewicz and Carl G. Durden, on behalf of themselves, persons claiming under their health plans, and all persons similarly situated,<br>Plaintiffs<br>v.<br><br>Blue Cross & Blue Shield of Rhode Island,<br>Defendant | C.A. NO. 96-275S |

STATE OF RHODE ISLAND SUPERIOR COURT
PROVIDENCE, S.C.

| | |
|---|---|
| Kerrigan Hanoian, Joseph Triangolo, and Terrence J. Kane, on behalf of themselves, persons claiming under their health plans, and all persons similarly situated,<br>Plaintiffs<br><br>v.<br><br>Blue Cross & Blue Shield of Rhode Island,<br>Defendant | C.A. NO. PB96-2579 |

**PARTIAL OPPOSITION TO MOTION FOR**
**APPROVAL OF FINAL DISBURSEMENTS**

Blue Cross & Blue Shield of Rhode Island ("Blue Cross") opposes the request by Siegel, Brill, Greupner, Duffy & Foster, P.A. ("Foster"), DeLuca & Weizenbaum ("DeLuca") and the Law Office of Peter N. Wasylyk ("Wasylyk") (collectively referred to as "Class Counsel") for Court approval of additional disbursements to Class Counsel over and above the $5.67 million fee already awarded to Class Counsel from the joint settlement in the above-captioned cases. Blue Cross requests that the $203,198 remaining in the settlement

administration account (representing the uncashed or undelivered class member settlement checks) be combined with the $50,000 charitable savings account previously established as part of this settlement (the "Donation Fund") and distributed to charitable organizations that support the health and wellness needs of Rhode Islanders. In this regard, Blue Cross requests that the Court order that 90% of the Donation Fund (as determined after hearing on Class Counsel's Motion for Approval of Final Disbursements) be distributed to the "Rhode Island Free Clinic," a volunteer-staffed, community-based, non-profit organization that provides free medical care to Rhode Island adults who do not have health insurance. Blue Cross requests that 10% of the Donation Fund be awarded to the beneficiary requested by plaintiffs, AIDS Project Rhode Island.

Blue Cross has no objection to Class Counsel's request that disbursements totaling $1,475.73 be made in accordance with the "recent class member requests" described in the Memorandum in Support of Motion for Final Disbursements ("Memorandum") at 11. Except as set forth herein concerning additional disbursements to Class Counsel, Blue Cross has no objection to the Court approving the Memorandum as Class Counsel's final report.

**Additional Disbursements to Class Counsel Are Unwarranted**

At the time that approval was sought for the settlement of these matters, Class Counsel "anticipated future settlement administration costs" to be $148,000. See Application and Memorandum in Support of Application for Award of Attorneys' Fees, Expenses and Class Representatives Awards ("Fee Application") at 18.[1] The additional $203,198 that Class Counsel seek to be paid far exceeds their own estimate of settlement administration costs and are funds that are best put to use to benefit some of Rhode Island's neediest citizens. This is especially

[1] This is in addition to the $88,293 in costs that already had been expended from the settlement fund as of that date (July 2005).

true since Class Counsel have been amply rewarded for their efforts in this case and already have been compensated for some anticipated settlement administration expenses.

Based on the Fee Application, the Court authorized a $5.67 million attorney fee award to Class Counsel. This award, based on Class Counsel's "Lodestar" analysis, far exceeded the actual time expended by Class Counsel in this litigation. The value of Class Counsel's time amounted to no more than $3.223 million. Fee Application at 13. Foster's time was valued at $1.765 million; DeLuca's at $.330 million; and Wasylyk's at $1.128 million. Id. at 14.[2] The $5.67 million award to Class Counsel exceeded the value of the time actually expended by 46%. Id. While Class Counsel did not identify to the Court how the $5.67 million attorney fee award was apportioned among the three law firms, without question, Class Counsel all were made whole for the value of their time, plus a good amount more.

Moreover, the costs that Class Counsel contend should now be paid from the Donation Fund are all tasks that they should have – and in many cases did – foresee, and which should not be paid from funds otherwise available to benefit Rhode Island charitable causes. For example, in support of their request for additional fees, Class Counsel cite to a number of settlement administration tasks that were expressly described in the Stipulation of Settlement and/or Plan of Distribution. See Memorandum at 8.[3]

---

2 Interestingly, these values include anticipated, future expense associated with administering the settlement. Foster Affidavit in Support of Fee Application at 3-4.

3 All of the following administration tasks were defined in the relevant settlement documents and some formed part of the costs already approved by the Courts: creation and maintenance of the website; preparation and posting of the "frequently asked questions;" establishment and maintenance of a toll-free telephone line; calculation and distribution of settlement amounts and supervision of expert witness regarding the same; selection of mailing, banking and other services providers; preparation of interim reports; opening and monitoring bank accounts and working with bankers; approving checks and mailing lists; maintaining bank records; managing returned and cancelled checks; preparing required accounting documents for the courts; and responding to class member inquiries.

It appears that Class Counsel may have low-balled the anticipated settlement administration costs to be no more than $148,000 in their Fee Application to bolster their request for a one-third attorney fee award, in order to assure the Court that a substantial portion of the $17.5 million settlement would, in fact, benefit the Rhode Island citizens they represented. Class Counsel should not be allowed substantial additional remuneration under these circumstances. Settlement administration is not new territory for Class Counsel. Class Counsel repeatedly touted their expertise in class action litigation to the Court and hold themselves out to be experienced plaintiffs class action counsel, with a "national class action practice."[4] Clearly, Class Counsel knew and understood the realities, and estimated costs, of administering a settlement such as this.

Class Counsel attempted to enhance their request for additional fees by emphasizing that no claim is made for attorney time. Memorandum at 9. Instead, the additional fees are sought for paralegals and/or administrative assistants, who charge their time at the rate of $95 or $75 per hour. The total sought for paralegal/administrative services is $129,087.75 (at least some of which appears to have been claimed in the Fee Application as part of the lodestar). While Blue Cross does not dispute that these assistants did respond to numerous telephone calls and other inquiries, this was a task that was expected to be performed in connection with the administration of this settlement and was a burden that Class Counsel undertook as part of their agreement to administer the settlement. As indicated above, Class

---

[4] In fact, Siegel Brills' website claims that "Siegel Brill has an unusually well-developed practice in class actions and complex litigation. The firm has been retained by lawyers in over a dozen states to represent plaintiffs in class action cases, primarily in the areas of consumer protection law, ERISA, usury, and statutory violations. Verdicts and settlements in these cases have resulted in distributions to plaintiffs and class members well in excess of $100 million dollars."

Counsel have been amply compensated already by the Courts for their services on behalf of the class.

Class Counsel also seek approval of other expenses exceeding $92,557 (again at least some of which appear to have been included within the Fee Application). For Siegel Brill, they include fees associated with establishing the settlement website, photocopies, facsimile charges, federal express, mail services and AT&T charges. DeLuca seeks $100 an hour for picking up mail, sorting it and boxing and forwarding to Siegel Brill. Wasylyk seeks more than $81,000 allegedly for hiring additional staff[5] to answer telephone calls and to forward lists of callers to Siegel Brill, whose staff also attended to these calls and for which Siegel Brill seeks reimbursement. All of these fees and expenses are part of and attendant to the administration of a settlement of this size.

It is somewhat disingenuous for Class Counsel to claim surprise at the attention that this settlement received. That this litigation, and ultimately the settlement, was a matter of public concern in this state was an issue discussed on numerous occasions among counsel in this case and the Court. Class Counsel were not shy about media attention given to this case, and frequently emphasized the vast scope of the case – covering more than 10 years and hundreds of thousands of Blue Cross members. The public and class member interest in the settlement was fully understood and inquiries to Class Counsel are no more than part and parcel of the process.

Moreover, Blue Cross has serious concerns about how Class Counsel handled class member inquiries. As the Courts may recall, many criticisms were levied at Class Counsel, primarily citing unresponsiveness to telephone inquiries. Counsel for Blue Cross and Blue Cross' customer service department each received an untold number of telephone calls from

---

[5] The evidence of these expenses is exceedingly thin, comprising of a single email from Wasylyk to Foster stating Wasylyk's alleged expenses. Memorandum at Exhibit R.

class members concerning their inability to reach Class Counsel for purposes of settlement administration, that their calls (sometimes multiple calls) were unanswered and, sadly, in a handful of cases, abusive behavior was reported. These failures were particularly focused upon Wasylyk's office.[6]

**The Excess Settlement Funds Should Benefit Rhode Island Charitable Organizations**

The $203,000 that Class Counsel seek to appropriate for themselves should properly be distributed to charitable organizations. When this settlement was approved in 2005, it was expressly agreed and conditioned upon Class Counsel setting aside a minimum sum of $50,000 to serve as seed money for the Donation Fund. It was assumed by all parties that undelivered or uncashed checks remaining from the two-part distribution process would be combined with the seed money and form the basis for distributions to health related charitable organizations serving the Rhode Island public. Rather than have these funds support these worthwhile endeavors, as the settlement contemplated, Class Counsel seeks to use these funds to augment the substantial fees they already have received in this case.

Contributions to charitable organizations of approximately $250,000 from this settlement would meet the letter and spirit of the settlement and is the appropriate use of the uncollected settlement proceeds. In this regard, Blue Cross requests that most of the Donation Fund be allocated and awarded to the Rhode Island Free Clinic. The Rhode Island Free Clinic squarely meets the parameters established in the settlement for charitable contributions. Section 6.2.2 of the Plan of Distribution describes that the charitable organizations benefiting from the Donation Fund "shall be primarily engaged in the support of medical research, promotion of

---

[6] The Courts may also recall complaints having been made to the Courts directly concerning unresponsiveness. For example, in addition to letters written directly to the Courts, the Courts initiated a conference call with Class Counsel in October 2005 in response to customer complaints.

public health/wellness, or provision of medical services at low or no cost to individuals in needy circumstances." No organization in Rhode Island meets this definition better than the Rhode Island Free Clinic.

The Rhode Island Free Clinic was organized in 1999 as a community based, non-profit organization and is located in South Providence. The Free Clinic is unique in that it is fully staffed by volunteers. The staff includes interpreters, physicians, nurse practitioners, nurses, diabetic educators and nutritionists, all of whom donate their time and services. These volunteers also provide community-based educational opportunities for medical, nursing and pharmacy students, as trainees. Importantly, the Free Clinic is the only place in the State of Rhode Island that provides medical services to adults who do not have health insurance and is open only to those Rhode Islanders who are completely uninsured. The Free Clinic offers free, high quality, primary medical care and a full array of no and low cost medications, as well as diagnostic and specialty services.

There are more than 100,000 uninsured working age adults in Rhode Island. While most are employed, they hold one, sometimes two, low paying jobs and hover at or just below the poverty line. Without access to primary medical care, many patients see a physician in the emergency room when their illnesses have escalated to critical levels. They are treated and sent home with a prescription that they often cannot afford to fill. They may be referred to an appointment with a primary care physician that is typically during work hours, jeopardizing their jobs. Office visits often are too expensive to afford. It is difficult for these individuals to follow-up with primary care physicians and to take prescribed medication. The cycle continues.

The Rhode Island Free Clinic seeks to address these concerns, and should benefit from the excess settlement funds in this case. Significantly, the Free Clinic is funded <u>solely</u> by

charitable giving. It receives no governmental funding. It does not receive reimbursement from any health insurance companies for the care it provides. Attached hereto is a recent Providence Journal article dated February 25, 2007 that highlights the good work performed by the Rhode Island Free Clinic. Clearly, this organization stands to benefit from the settlement funds uncollected by the Blue Cross class members.

Blue Cross recognizes that one class member made a request at the July 15, 2005 Fairness Hearing, that AIDS Project Rhode Island be a beneficiary of the Donation Fund. While Blue Cross certainly agrees that AIDS Project Rhode Island is a worthy non-profit organization that provides benefits to the citizens of the State, the terms of the settlement require that beneficiaries of the Fund have a broader focus on health and wellness and a mission to serve the community at large. Nonetheless, as this organization has been specifically requested, Blue Cross would not oppose 10% of the Donation Fund to benefit AIDS Project Rhode Island in support of the specialized services provided by that organization.

For the foregoing reasons, Blue Cross requests that the Courts deny any additional reimbursements to Class Counsel. Blue Cross does not oppose disbursement of $1,475.73 for “recent class member requests” and requests that all amounts remaining in the settlement administration account be distributed with the Donation Fund as set forth herein.

BLUE CROSS & BLUE SHIELD OF RHODE ISLAND

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

/s/ Steven E. Snow
/s/ Melissa E. Darigan

Steven E. Snow (#1774)
Melissa E. Darigan (#4792)
180 South Main Street
Providence, RI 02903-7120
(401) 861-8200
(401) 861-8210 FAX
ses@psh.com
med@psh.com

DATED: March 26, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of March, 2007, I electronically filed the PARTIAL OPPOSITION TO MOTION FOR APPROVAL OF FINAL DISBURSEMENTS with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System and that the following have received notice electronically and via mail, postage prepaid to the following:

Wood R. Foster, Jr., Esq.
SIEGEL, BRILL, GREUPNER, DUFFY & FOSTER, P.A.
1300 Washington Square
100 Washington Avenue South
Minneapolis, MN 55401

Amato A. DeLuca, Esq.
DELUCA & WEIZENBAUM, LTD.
199 North Main Street
Providence, RI 02903

Peter N. Wasylyk, Esq.
LAW OFFICES OF PETER N. WASYLYK
1307 Chalkstone Avenue
Providence, RI 02903

/s/ Melissa E. Darigan

906692_1/747-61